UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY MARGARET JIMENEZ,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>Defendant. | No. 1:20-cv-01808-ADA-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 21)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.  Introduction**

Plaintiff Kimberly Margaret Jimenez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs.[1] Docs. 21, 23. After reviewing the record the undersigned finds that substantial evidence and applicable law support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant, against Plaintiff, affirming the final decision of the Commissioner of Social Security.

**II.  Factual and Procedural Background[2]**

On January 10, 2017 Plaintiff applied for supplemental security income. The Commissioner denied the application initially on June 2, 2017 and on reconsideration on August 21, 2017. AR 158, 172. A hearing was held before an Administrative Law Judge (the "ALJ") on March 22, 2019.

---

[1] The parties did not consent to jurisdiction the Magistrate Judge. *See* Docs 8, 11. Accordingly, the matter was then assigned to District Judge Dale Drozd and reassigned to District Judge Ana de Alba upon her appointment. Doc. 9, 20.

[2] The undersigned has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

1

AR 28–62.  On July 29, 2019 the ALJ issued an unfavorable decision.  AR 63–81.  The Appeals Council denied review on May 28, 2020.  AR 6–12.

### III.    **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of January 10, 2017. AR 69. At step two the ALJ found that Plaintiff had the following severe impairments: arthritis; herniated cervical discs; history of fibular fracture; traumatic brain injury; major depressive disorder; borderline personality disorder; generalized anxiety disorder; post-traumatic stress disorder; panic disorder; and "methamphetamine dependence in full, sustained remission." AR 69. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 69–71.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following additional restrictions: occasional climbing; frequent postural activities; simple and repetitive tasks with simple work related decision making; "work in isolation, meaning other individuals may be present in the general vicinity from time to time (e.g., in a commercial office building during a graveyard shift where there may be some individuals around like security), but

where the claimant would not be required to interact with others;" no public contact and only occasional contact with supervisors. AR 71–75

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as a grocery bagger (medium exertional level). AR 38. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy: merchandise marker; electrical accessories assembler; small parts assembler. AR 76. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her application date of January 10, 2017. AR 76.

## V.     Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ improperly discounted the medical opinions; and 2) that the ALJ erred by rejecting Plaintiff's statements.

### A.     The Medical Opinions

#### 1.     Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R.

§ 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. **Analysis**

#### a. **Dr. Rambo**

Dr. Rambo completed two treating source opinions ("Mental Disorder Questionnaire For Evaluation of Ability to Work") dated July 31, 2017 and May 30, 2018.  AR 469–70; 471–72.  On the first questionnaire Dr. Rambo opined, in relevant part, that: 1) Plaintiff exhibited abnormalities related to judgment, mood swings, social isolation, and suicidal ideation with recent aborted suicide attempt, all of which resulted in a "Significant Impairment" of her ability to work; 2) she required the assistance of others in performing activities of daily living (ADLs) to maintain a social acceptable standard of self-care; 3) her social functioning was deficient to the point it would impair her ability to interact with supervisors, coworkers, and the general public; 4) she had impaired ability to adapt to work place stressors; and 5) her condition was unlikely to improve in the next 12 months.  AR 469–70.

On the second questionnaire Dr. Rambo similarly opined and further indicated that Plaintiff: 1) has a history of chronic pain status post 2009 motor vehicle accident; 2) has impaired concentration due to anxiety, paranoia, and chronic pain; 3) has poor judgment demonstrated by treatment non-compliance; and 4) suffers delusions or paranoid thoughts.  AR 471–72.

The ALJ addressed the opinions as follows:

> The opinion of the treating source at B6F and B7F are given partial weight. As a preliminary matter, the opinions are often vague and unqualified. Noting that the claimant has a "significant impairment" is not enough information to adequately determine how her limitations may translate into her ability to work. That aside, the evidence does indicate that the claimant has limitations in concentration and interacting with others. Furthermore, the undersigned has considered this provider's notes reporting that the claimant refuses to engage in treatment.

AR 74.

Plaintiff disputes the ALJ's first two articulated reasons and reasonably so.  To state that the opinion was often "unqualified" is an unusual choice of words.  A common refrain is that the

*claimant's physician* is not qualified to opine on the ultimate conclusion of disability, which is a legal determination reserved for the Commissioner. But it is not clear that this was the intent behind the ALJ's statement, nor does it appear that Dr. Rambo attempted to opine on the ultimate issue of disability. Dr. Rambo is a licensed medical doctor whose qualifications are not in dispute. As Plaintiff's treating physician he was amply qualified and well positioned to complete the questionnaires opining on the impact of Plaintiff's medical impairments which is precisely what he did.

It is also not clear in what sense the opinion was "vague." The form is a pre-printed questionnaire with check boxes and limited space for narrative explanation which Dr. Rambo provided where appropriate and with reasonably adequate detail. If the opinion was vague, the culprit is the form not the doctor.

The source of the form is unclear but it resembles the forms maintained by the agency such as form HA-1152 (Medical Source Statement of Ability to do Work Related Activities (Mental)),[3] perhaps with the distinction that the forms Dr. Rambo completed ask the physician to answer yes or no as to whether the impairments/limitations are "significant." The agency's form HA-1152, on the other hand, rates the limitations on a four- point spectrum ranging from mild to extreme.

Notwithstanding, neither the ALJ nor defense counsel's common critique of check-box questionnaires is well taken given the same critique is often levied against check-box forms maintained by the agency. If the agency feels it would be more useful for treating physicians to accompany check-box questionnaires with narrative opinions (as consultative examiners often do), citing and describing clinical findings and explaining how they support the limitations identified in the check-box form, then that should be made abundantly clear and the physician should be instructed to attach a separate narrative explanation. The limited space provided on the check-box

---

[3] Available at https://omb.report/icr/202101-0960-006/doc/108192200

7

questionnaires is often woefully inadequate to provide the level of detail ALJ's expect.

The ALJ also took issue with the use of the term "significant" in the check-box questionnaire, finding it to be insufficiently descriptive to be useful in determining work functionality. This reasoning is not persuasive as the form provides a definition of "significant," namely inability "to perform simple work for two hours at a time or for eight hours per day," and inability to "perform full time work, week after week." AR 469, 471. In other words, it is fairly clear that "significant" as used on the forms here is intended to mean work preclusive and is more or less tantamount to an "extreme" limitation as used in form HA-1152, and also as used in the paragraph B criteria of the Commissioner's listings. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (defining "extreme" limitation as "unable to function in this area independently, appropriately, effectively, and on a sustained basis.").

However, Plaintiff disregards the third reason articulated by the ALJ as quoted above, namely Dr. Rambo's notation that Plaintiff refused to engage in treatment (an issue which Plaintiff discusses in more detail in support of her second claim of error). Indeed, Dr. Rambo noted "Ms. Jimenez is generally opposed to long-term use of medications, and not open to taking medications that cause side effects. In the absence of recommended treatment, one might expect health conditions that are affecting ability to work to persist." AR 469.

Although the desire to avoid side effects is understandable, Dr. Rambo also opined in both questionnaires that none of Plaintiff's prescribed medications cause adverse side effects to the degree that it would impair her ability to perform normal work. AR 470, 472. This argues against Plaintiff's claims about the severity of the side effects.

"[U]nexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can justify rejection of a claimant's pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Tommasetti v.*

8

*Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment").

Plaintiff's explanation for failure to follow prescribed treatment is discussed in more detail below in the section addressing Plaintiff's second claim of error. Suffice it to say at this juncture that, although the above quoted caselaw addresses this issue in the context of an ALJ's adverse credibility determination, because that determination is governed by the "clear and convincing reasoning" standard ("the most demanding standard required in Social Security cases"),[4] it follows that inadequately explained failure to follow prescribed treatment also justifies rejecting a treating physician's opinion about the disabling effect of the impairment. Indeed, rejection of a treating physicians' opinion is governed by the same "clear and convincing reasoning" standard (in the case of an uncontradicted opinion), or governed by the less demanding "specific and legitimate reasoning" standard in the case of a contradicted opinion. *Lester*, 81 F.3d at 830–31.

### b. Dr. Sanchez

Dr. Sanchez conducted a consultative psychiatric examination of Plaintiff on May 24, 2019. AR 898–913. Dr. Sanchez opined that Plaintiff had marked restrictions in several areas including: social interaction; concentration, persistence, and pace; adaptation and self-management. AR 912. The ALJ accepted the marked limitations in social interaction and incorporated them into the RFC, but rejected the remaining marked restrictions as unsupported noting: 1) "At appointments the claimant was able to perform digit span testing and demonstrated good memory recall;" and 2) "this source does not appear to consider the fact that the claimant is unwilling to accept treatment." AR 74.

The ALJ did not cite the appointments in question in the paragraph specifically addressing

---

[4] *Moore v. Commissioner of SSA*, 278 F.3d 920, 924 (9th Cir. 2002).

9

Dr. Sanchez's opinion, but did so earlier in the decision as follows:

> The claimant indicated that she has trouble with her memory. At appointments though, providers typically noted a normal memory (E.g., B3F/4; Bl6F/3). For example, she was able to recall 3/3 items immediately and after 5 minutes at one consultative examination (B3F/4). At another consultative examination, she was able to recall 3/3 items immediately, but only 1/3 after 5 minutes (Bl9F/8). That examiner also noted that the claimant appeared to be of impaired intelligence (Bl9F/7).
> . . .
> At an appointment with a consultative examiner, the claimant was unable to perform serial 7s (Bl9F/8). On the other hand, at a different consultative examination, she could do simple math (B3F/4). Furthermore, providers noted her digit span to be at least 4 forward and 4 backward at several appointments (B3F/4; Bl9F/8).

AR 70.

The second citation (Ex. B16F/3, AR 878) was a February 21, 2019 office visit with Dr. Perry (a Neurosurgeon) at Pan Pacific Neurosurgical associates to address chief complaints of back and neck pain to which Dr. Perry diagnosed symptomatic degenerative disc disease. Although the ALJ is correct that recent and remote memory were noted as normal ("intact") the findings under "mental status" were quite limited in scope and detail compared to, for example, the detailed neurological and musculoskeletal examination findings. That is not surprising given the purpose of the visit was not related to the issue of Plaintiff's mental health, and there was no discussion concerning mental health as Dr. Perry is not qualified to diagnose or treat problems related to mental health.

It is a questionable practice to rely on bare bones mental status findings (oriented x 3; appropriate mood, affect and language; spontaneous speech; intact memory and fund of knowledge) from orthopedic exams (or other specialist visits outside the context of mental health) as exemplary of normal mental status, such as Plaintiff's "typically . . . normal memory." That practice is particularly questionable where, as here, the record not only contains numerous comprehensive mental status examinations by psychiatric professionals, but also in-depth cognitive testing (Weschler Intelligence and Memory Scale IV) which are far more probative of cognitive

10

functioning.

The ALJ also relied on the May 13, 2017 consultative examination with Dr. Michiel at which Plaintiff demonstrated 3/3 item recall immediately and at 5 minutes, could do simple math, and perform digit span 4 forward and backward. Ex. 3F/4, AR 437. Commensurate with those findings, Dr. Michiel did not identify any limitations (understanding/memory, concentration/persistence/pace, adaptation, social interaction, or otherwise) with respect to Plaintiff's ability to perform simple job instructions. *Id.*

By contrast, the ALJ acknowledged the May 24, 2019 consultative examination with Dr. Sanchez (the author of the opinion at issue) at which Plaintiff was unable to perform serial 7s (related to concentration), could only recall 1 of 3 objects after five minutes, and was noted to be of low intelligence. It was also noted that Plaintiff needed to use her fingers to perform simple calculations and could not spell the word "world" backward (which the ALJ did not acknowledge) but could spell it forward. The ALJ concluded on balance that these findings supported no more than a moderate limitation in understanding, remembering, and applying information, and a moderate limitation in concentration, persistence and pace.

At the consultative examination, however, Dr. Sanchez also administered the: 1) Wechsler Intelligence Scale-IV testing for which Plaintiff scored in the borderline range with "extremely low" scores in the areas of verbal comprehension and working memory (bottom 1 percentile) (AR 906); and 2) the Wechsler Memory Scale-IV testing for which Plaintiff's results were also in the extremely low range with scores in the bottom 0.1 and 0.4 percentile for immediate and delayed memory. *Id.*

Although the ALJ did acknowledge the deficiencies Dr. Sanchez noted upon mental status examination, and did acknowledged Dr. Sanchez's notation that Plaintiff "appeared to be of low intelligence," concerningly the ALJ did not recite or reference the results of the Weschler

11

Intelligence Scale-IV nor the Weschler Memory Scale-IV cognitive test which Dr. Sanchez performed, with scores at or below the bottom 1 percentile for verbal comprehension, working memory, immediate memory, and delayed memory.

Nevertheless, the ALJ's rejection of Dr. Sanchez's consultative examining opinion was adequately supported by the first consultative examination performed by Dr. Michiel who identified no comparable deficits in memory or other areas upon examination, and who identified no limitations with respect to Plaintiff's ability to perform simple job instructions. AR 437.

Further, the ALJ's rejection of Dr. Sanchez's consultative opinion was supported by the opinion of Plaintiff's treating physician Dr. Rambo, whose opinion Plaintiff contended earlier the ALJ should have accepted. Notably, despite identifying limitations in some areas, Dr. Rambo's opinion contrasted with that of Dr. Sanchez in that Dr. Rambo opined in one out of two questionnaires that Plaintiff had no work related limitations with respect to concentration (AR 469), and opined in both questionnaires that Plaintiff had no work related limitations with respect to memory or intelligence (AR 469, 471).

Thus, Plaintiff's somewhat undifferentiated critique of the ALJ's "improper rejection" of the examining opinions is imprecise. Plaintiff suggests the ALJ should have accepted Dr. Rambo's and Dr. Sanchez's opinions, but Plaintiff overlooks that the acceptance of one opinion necessarily implies the rejection of the other in certain areas, and conversely. Though not overtly stated, Plaintiff would have the ALJ accept only the most restrictive components of both opinions and reject the remainder, which the ALJ is not required to do. *See Jamerson*, 112 F.3d at 1066 (noting that where the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.).

Finally, Plaintiff disputes the ALJ's finding that Dr. Sanchez "does not appear to consider the fact that the claimant is unwilling to accept treatment." AR 74. Plaintiff underscores two

statements from Dr. Sanchez's opinion regarding Plaintiff's judgment and insight, namely: 1) that although Plaintiff did "appear to acknowledge the influence of her current impairments upon her daily functioning . . . she remains somewhat resistance to finding resolution." (AR 905); and 2) that Ms. Jimenez "acknowledges the influence of her mental health and medical conditions upon her current functioning; however, she remains unclear about how to move forward even with the assistance and recommendations of providers." *Id.*

Further to the point, under "Review of Records" Dr. Sanchez did specifically recite Dr. Rambo's statements concerning treatment non-compliance: "E. Rambo, MD, indicates that Ms. Jimenez . . . is generally opposed to long-term use of medications, and not open to taking medications that cause side effects. . ." AR 899. Thus, the ALJ is mistaken as Dr. Sanchez did explicitly consider Plaintiff's unwillingness to accept treatment.

However, whether Plaintiff failed to follow her prescribed course of treatment and whether she had an adequate explanation for doing so are issues of independent significance in determining the disabling impact of Plaintiff's mental impairments, irrespective of the consultative examiner's awareness of that failure. The ALJ's commentary on that issue was imprecise and inaccurate, but also unnecessary. The ALJ's rejection of Dr. Sanchez's opinion was supported by the examination and associated opinion of Dr. Michiel, partially supported by the opinion of Dr. Rambo, and further supported by the fact that Plaintiff did not follow her prescribed course of treatment.

### B.    Plaintiff's Subjective Statements

#### 1.    Applicable Law

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3).

The ALJ is responsible for determining credibility,[5] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other

---

[5] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

### 2. **<u>Analysis</u>**

Plaintiff offers little to no discussion of the oral or written statements she contends were wrongfully rejected, and no attempt to explain what changes to the RFC would logically result if her subjective statements were accepted (for example, statements about her social anxiety and fear of public places, which were reasonably accounted for in the RFC by a restriction to isolation work, no public contact, and only occasional supervisor contact).

Thus, Plaintiff's argument falls short from the outset.  *See Juniel v. Saul*, No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) ("Plaintiff fails to show this limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was not properly accounted for in his residual functional capacity, which indicated Plaintiff 'could not have public contact' and limited interaction with co-workers); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted); *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

The substance of Plaintiff's argument will nevertheless be addressed.  Plaintiff contends that the ALJ's primary reason for rejecting Plaintiff's "statements" (whatever those statements might be) was Plaintiff's non-compliance with treatment.  Plaintiff relies on the Ninth Circuit's statement in *Nguyen* that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Plaintiff contends *Nguyen* applies here because her failure to comply with treatment is attributable to her poor judgment, consistent with her providers' notations in the record that her judgment and behavior are influenced by her mental illness. Br. at 15 (citing AR 448). Defendant interprets the same records differently contending that it was not the case that Plaintiff's mental health impairments led her to avoid treatment, but rather the converse. However, this disagreement is not illuminating.

The Ninth Circuit has recently rejected an argument similar to the one Plaintiff advanced here, albeit in an unpublished decision, and with minimal discussion of how the panel's finding was consistent with the above-quoted language from *Nguyen* which is often central to the debate about a claimants' failure to follow treatment recommendations. *See Mata v. Kijakazi*, No. 22-35482, 2023 WL 3836421, at *3 (9th Cir. June 6, 2023) ("Mata argues that the reason he didn't follow his prescribed treatment plan was because his mental impairments undermined his judgment. But the ALJ could reasonably infer from his behavior and his mother's statement that Mata's symptoms were not as bad as he claimed, such that he reasonably felt no need to properly treat them with medications.").

The Ninth Circuit provided a more useful standard in a published decision in *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (finding that the ALJ permissibly discounted assertions about the claimant's disabling limitations based on failure to seek psychiatric care for anxiety disorder when "no medical evidence" showed that claimant's resistance to treatment "was attributable to her mental impairment *rather than her own personal preference*") (emphasis added), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Here, the ALJ provided the following discussion of note:

> However, the evidence also indicates that the claimant refuses to take medication or engage in therapy. Providers repeatedly indicated that the claimant was opposed to long-term use of medications, and especially opposed to taking medications that cause any side effects (E.g., B6F/l, 2; B4F/l1; B7F/2). Of note, the claimant appeared

16

> to be especially unwilling to tolerate medication-induced weight gain (B4F/l l). Similarly, one provider noted that if the claimant were given the option between '"good mental health at 160 pounds' or 'current level of mental health problems at 135 pounds' she would pick the lower weight and mental health problems" (B4F/8). Her providers also note that the claimant tends to self-discontinue medication (B4F/3; Bl2F/l). In addition to refusing medication, the claimant is also resistant to therapy (B7F/2). Her providers have urged her to engage in behavioral therapy, but "the patient has not followed this repeated recommendation" (Bl2F/9). At one point, her providers mailed her a letter filled with recommendations for local therapists, but the claimant admitted that though she did receive the letter, she never opened it (Bl2F/39). Additionally, the claimant "wonders if engaging in psychotherapy 'will help my social security case'" (Bl2F/39). This evidence leads to the conclusion that her impairments are not as limiting as alleged.

AR 73.

The facts identified by the ALJ suggest that Plaintiff's treatment non-compliance was attributable to personal preference. Plaintiff does not acknowledge the ALJ's pertinent discussion or dispute the accuracy thereof, and a review of the cited exhibits reveals they do stand for the propositions for which the ALJ cited them.

Plaintiff nevertheless contends that she had valid reasons for treatment non-compliance. First, Plaintiff notes "she has a history of trouble tolerating psychiatric medications which has made her resistant to taking and trying new medications", and that medication side effects were worse than the symptoms of the psychiatric conditions.

Plaintiff cites a May 24, 2017 visit with Dr. Rambo which covered her "past psychiatric medication trials." AR 446. Abilify caused upset stomach, laziness, and was ineffective. Zoloft caused agitation, headaches and nausea. As for Celexa, she did not recall effects or side effects. As for Lexapro, it was unclear if she actually took the medication as she could not recall effects or side effects. Topamax was discontinued because it interrupted her thinking. Seroquel was ineffective and caused daytime grogginess. As for hydroxyzine, she didn't remember effects or side effects and may not have taken it because it was a weight gainer. *Id.* Several other medications were listed with no commentary on when or why they were discontinued (Cymbalta, Vilbryd,

Amitriptyline, Ativan, Klonopin). Plaintiff also cites an October 25, 2017 visit with Dr. Rambo which reflects the same medication history with the addition of Lamictal which caused headaches and nausea. AR 671.

Although the cited records do reflect trouble tolerating psychiatric medications, they do not reflect she was intolerant to all medications her providers tried, which included 13 different SSRIs, SNRIs, mood stabilizers, and benzodiazepines. Nor do the records suggest that the side effects were so severe that they were worse than the baseline symptoms of the psychiatric conditions. Her testimony also suggests her concern about weight gain was perhaps overblown. *See* AR 122 ("Actually, I was taking Celexa for like a couple of weeks but I got on the scale after a couple of weeks. I gained two pounds so I stopped taking them.").

Importantly, Dr. Rambo opined in both questionnaires that none of Plaintiff's prescribed medications cause adverse side effects to the degree that it would impair her ability to perform normal work, which undermines the suggestion that the side effects were severe. AR 470, 472. On balance, the record suggests that her resistance to medication was a personal preference.

Plaintiff also contends she did not pursue therapy because of insurance and transportation issues, and that inability to afford treatment is a valid reason not to pursue that treatment. In support, Plaintiff cites an October 26, 2018 visit with Dr. Chang. AR 648. The cited record notes as follows:

> Have urged patient to engage in CBT and/or DBT. Patient has not followed this repeated recommendation. Patient declines to engage in therapy at FCBH. States that she prefers to engage in therapy closer to her home and she plans to seek community based therapist and/or clinic near her home. Most recently patient stated that she did not pursue therapy because she believed that CalViva health insurance would not cover transportation to the appointments ("that's what my neighbor said").

There is no indication that Plaintiff confirmed what her neighbor said, and in that sense the cited record does not necessarily corroborate Plaintiff's concerns regarding insurance and

transportation. Further, as quoted by the ALJ, a July 19, 2017 visit with Dr. Rambo contains additional discussion of note:

> Patient states that clinic therapy coordinator (Dion) told her that he would send her a list of therapists/ therapy resources in the community. She did receive letter from him in the mail but states "I haven't opened the letter to be honest."
>
> On review of Dion's chart note, it is indicated that patient declined to be seen at FCBH for psychotherapy services. Patient confirms that she prefers not to be seen at FCBH for psychotherapy due to (1) cost of gasoline to drive to/from appointments. (2) preference not to leave home or travel far from home due to anxiety.
>
> Patient wonders if engaging in psychotherapy "will help with my social security case".
>
> Patient states that she struggles with financial constraints. Mother is helping patient by paying half of patient's rent.

AR 678.

Although limited finances and transportation are understandable impediments to pursuing therapy, without opening the letter from the therapy coordinator containing a list of therapy resources in her community, Plaintiff would not know what resources were available, how close to her home they were located, and what the insurance would or would not cover. As such, her concerns were somewhat hypothetical and not a legitimate reason to disregard her providers' treatment recommendation that she pursue therapy.

The ALJ reasonably concluded based on Plaintiff's resistance to medication and therapy that her mental impairments were not as limiting as alleged.

**VI.   Conclusion**

For the reasons stated above, the undersigned recommends that the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. The undersigned further recommends that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied and that the Clerk of Court be directed

to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Kimberly Margaret Jimenez.

### **VII.** **Objections Due within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 5, 2023**          /s/ Gary S. Austin
                                                  UNITED STATES MAGISTRATE JUDGE